UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EXCELLUS HEALTH PLAN, INC.,

                                        Plaintiff,

                                                                Case # 24-CV-6263-FPG

v.

                                                                DECISION AND ORDER

BLACKFLY INVESTMENTS, LLC,

                                        Defendant.
_____

## INTRODUCTION

Plaintiff Excellus Health Plan, Inc. (d/b/a Excellus BlueCross BlueShield) brings this action seeking damages from Defendant Blackfly Investments, LLC (d/b/a Molecular Testing Labs) related to payments Plaintiff made to Defendant for COVID-19 testing services provided by Defendant to Plaintiff's subscribers. ECF No. 1. Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7). ECF No. 9. In the alternative, Defendant moves to transfer venue to the Western District of Washington pursuant to Rule 12(b)(3). *Id.* Plaintiff opposes the motion in its entirety. ECF No. 13. For the reasons that follow, Defendant's Motion, ECF No. 9, is DENIED.

## BACKGROUND

According to the complaint, Plaintiff is a health insurance provider headquartered in Rochester, New York, that entered into group health insurance plans with a number of affiliated nursing home operators (the "Nursing Homes") located in the Rochester area. ECF No. 1 ¶¶ 6–7. While Plaintiff was providing health care coverage to the Nursing Homes' employees, the COVID-19 Pandemic (the "Pandemic") occurred beginning in early 2020. *Id.* ¶ 11. In response to the Pandemic, on May 10, 2020, the Governor of New York issued an Executive Order requiring all

nursing homes in New York to test their employees for COVID-19 on a twice weekly basis (the "Nursing Home Testing Mandate"), regardless of whether the employees were suspected of having been exposed to COVID-19. *Id.* ¶ 15–16. On June 9, 2020, the Nursing Home Testing Mandate was modified to require testing of nursing home employees only once per week. *Id.* ¶ 18.

Plaintiff alleges that in order to comply with the Nursing Home Testing Mandate, the Nursing Homes contracted with third-party testing companies, such as Defendant, to perform COVID-19 testing of their employees on a weekly basis. *Id.* ¶ 20. Plaintiff also alleges that the contracts the Nursing Homes entered into with Defendant provided that the Nursing Homes would pay Defendant a flat "service fee" for the cost of the testing performed on their employees in the event that it was not covered through health insurance or governmental subsidy. *Id.* ¶ 21. Additionally, Plaintiff alleges that after performing the testing, Defendant acted on the employees' behalf to attempt to obtain coverage or reimbursement for the cost of the testing from the employees' health insurers and/or the government by filing necessary claim forms on the employees' behalf, including with Plaintiff. *Id.* ¶ 22. Plaintiff contends that if Defendant's request for reimbursement was denied, Defendant billed the Nursing Homes for the cost of the testing performed on their employees as agreed to in their contracts.[1] *Id.* ¶ 23.

Initially, there was confusion and conflicting guidance from the state and the federal governments about whether health insurers such as Plaintiff were required to cover testing related to the Nursing Home Testing Mandate. *See id.* ¶¶ 27–39. Plaintiff alleges that, ultimately, the guidance made clear that insurers like Plaintiff were only legally required to provide coverage for COVID-19 testing for individual diagnostic purposes. *Id.* ¶¶ 32, 39. Consistent with all available

---

[1] All of Plaintiff's allegations contained in this paragraph are made upon information and belief. ECF No. 1 ¶¶ 20–23.

law at the time, Plaintiff implemented an administrative policy regarding COVID-19 testing (the "Testing Administrative Policy") for its health insurance plans around June 8, 2020, which was retroactive to March 13, 2020. *Id.* ¶ 40. Per the Testing Administrative Policy, COVID-19 testing of the Nursing Homes' employees that was ordered or performed solely for purposes of pandemic control or on an asymptomatic individual solely for purposes of work—including the surveillance testing required by the Nursing Home Testing Mandate—was expressly not covered by Plaintiff. *Id.* ¶ 43.

During the early part of the Pandemic, Plaintiff alleges that Defendant submitted numerous claims to Plaintiff seeking reimbursement for the cost of the COVID-19 testing performed on the Nursing Homes' employees. *Id.* ¶ 44. Specifically, Plaintiff maintains that during the calendar years 2020 and 2021, Defendant submitted roughly 2,817 claims to Plaintiff on behalf of the Nursing Homes' employees seeking reimbursement for the cost of surveillance testing provided by Defendant to those employees from approximately May 2020 to June 2021, totaling $311,681.98 (the "Surveillance Testing Claims"). *Id.* ¶ 45. Plaintiff claims that most, if not all, of the Surveillance Testing Claims submitted to Plaintiff were coded as diagnostic testing or expedited diagnostic testing, suggesting that the claims involved testing provided for individual diagnostic purposes. *Id.* ¶ 46.

However, according to Plaintiff, these claims did not involve testing provided for individual diagnostic purposes and instead, involved surveillance testing based on the Nursing Home Testing Mandate, which was not covered by Plaintiff. *Id.* ¶ 47. Plaintiff claims that due to the confusion and uncertainty surrounding the Pandemic and a directive from the State of New York to expedite the payment of claims, Plaintiff paid Defendant for these claims on behalf of its

3

members based on the information provided in the claim submissions that stated the claims were for diagnostic testing. *Id.* ¶ 48.

After subsequently conducting an audit of its claims, Plaintiff discovered that the Surveillance Testing Claims had been paid in error, as these claims were for surveillance testing, which was expressly not covered by Plaintiff. *Id.* ¶ 49. Plaintiff claims that it then immediately informed Defendant of the error and demanded reimbursement of all sums it erroneously paid in connection with the uncovered Surveillance Testing Claims. *Id.* ¶ 50. Plaintiff also claims that it further informed Defendant that all future claims or requests seeking reimbursement for the cost of similar surveillance testing services would be denied by Plaintiff. *Id.* ¶ 51. Despite Plaintiff's demands for repayment, Plaintiff alleges that Defendant has refused to return the payments made by Plaintiff in error and continues to wrongfully retain these funds. *Id.* ¶ 52.

On April 30, 2024, Plaintiff brought the instant action in this Court. ECF No. 1. Plaintiff brings four claims seeking damages for: (1) money had and received, (2) payment by mistake, (3) unjust enrichment, and (4) restitution. *Id.* All of these claims arise out of the alleged wrongful retention by Defendant of health insurance payments erroneously made by Plaintiff to Defendant for the Surveillance Testing Claims. *Id.*

## DISCUSSION

Defendant moves to (I) dismiss pursuant to Rule 12(b)(1) and 12(b)(7), arguing that Plaintiff has failed to join thirteen indispensable parties, which, once joined, would deprive the Court of subject matter jurisdiction; (II) dismiss pursuant to Rule 12(b)(2), arguing that this Court lacks personal jurisdiction over Defendant; (III) dismiss or transfer the action under Rule 12(b)(3), arguing that this District is an improper venue; and (IV) dismiss pursuant to 12(b)(6) for failure to state a claim. ECF No. 9. The Court discusses each in turn.

4

## I.     Dismissal Pursuant to Rule 12(b)(1) and 12(b)(7)

Defendant's first argument is that Plaintiff's complaint should be dismissed under Rule 12(b)(7) because Plaintiff has failed to join thirteen indispensable parties. ECF No. 9-1 at 15. Defendant further argues that once these parties are joined, this Court will not have subject matter jurisdiction because the parties will destroy complete diversity. *Id.* at 14. Thus, it argues that the action should be dismissed pursuant to Rule 12(b)(1) as well.[2] *See id*. The Court disagrees.

### a.  Legal Standard

Under Rule 12(b)(7), a Court may dismiss an action for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 sets forth a "two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). First, the Court must determine whether an absent party belongs in the suit—that is, whether the party qualifies as a "necessary" party under Rule 19(a). *Id.* (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124, (1968)). A party is necessary under Rule 19(a)(1) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If the Court makes a threshold determination that a party is necessary under Rule 19(a) and joinder of the absent party is not feasible for jurisdictional or other reasons, then the Court continues to the second step of the analysis to determine whether the party is

---

[2] Because the Court concludes that the Nursing Homes are not indispensable parties, it does not address the motion under 12(b)(1), as no parties that could destroy diversity must be joined.

indispensable under Rule 19(b). *Viacom Int'l, Inc.*, 212 F.3d at 725. However, if a party does not qualify as necessary under Rule 19(a), then the Court need not decide whether its absence warrants dismissal under Rule 19(b). *Id.* at 724.

### b. Rule 19(a)(1)(A)

Defendant argues that Rule 19(a)(1)(A) applies here because without "the joinder of each of the Thirteen Nursing Homes to submit into evidence their insurance contracts to allow the Court to determine whether they or [Plaintiff] (through its contractual obligations to the nursing homes) were obligated to pay for the COVID-19 testing, [Defendant] cannot be accorded complete relief against [Plaintiff] or those nursing homes (who are required to arbitrate in Washington)." ECF No. 9-1 at 15–16. Further, Defendant argues that the Court cannot resolve "a coverage dispute between the insurer and the insureds without both the insurer and those insureds being made parties to the lawsuit." ECF No. 14 at 8.

A party is necessary under Rule 19(a)(1)(A) only if "in that person's absence, the court cannot accord complete relief *among existing parties*." Fed. R. Civ. P. 19(a)(1) (emphasis added). Thus, in this case, the thirteen Nursing Homes are only necessary if in their absence, this Court would be unable to grant complete relief between Defendant and Plaintiff. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006).

Here, the Court concludes that because the basis for the claims in this action only involve whether Defendant is obligated to return money to Plaintiff, the Court can grant complete relief between Plaintiff and Defendant without joining the thirteen Nursing Homes identified by Defendant. Further, even if the insurance contracts are necessary for deciding the case, Plaintiff could submit them as evidence without the thirteen Nursing Homes being joined. Therefore, the

6

Court concludes that Plaintiff has failed to identify a reason why the thirteen Nursing Homes would need to be joined to grant complete relief between the existing parties.

### c. Rule 19(a)(1)(B)

Defendant also argues that Rule 19(a)(1)(B) applies in this case. Rule 19(a)(1)(B) requires that "the absent party claim a legally protected interest relating to the subject matter of the action." Fed. R. Civ. P. 19(a)(1)(B). Therefore, the applicability of this subsection is contingent upon the absent party asserting a legally protected interest in this case. Defendant argues that each of the thirteen Nursing Homes have "claimed an interest relating to the subject of the action" by filing a complaint in State Court about the coverage issues that are also at issue in this case. ECF No. 9-1 at 16.

However, the Court finds this argument unpersuasive. The Second Circuit has explained that a defendant cannot attempt to assert an interest on behalf of a third party under Rule 19(a)(1)(B). *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 48 (2d Cir. 1996). Instead, "[i]t is the absent party that must 'claim an interest.'" *Id.* Thus, Defendant cannot assert an interest on the thirteen Nursing Homes' behalf based on their action in State Court. The thirteen Nursing Homes must claim that interest.

Here, the thirteen Nursing Homes have not moved to intervene in the instant litigation and as such, have not claimed a legally protected interest relating to the subject matter of this action. *See Fair Hous. v. Town of Huntington*, No. 02–CV–2787, 2010 WL 2730757, at *11 (E.D.N.Y. July 8, 2010) ("[N]one of the allegedly indispensable parties has moved to join the instant litigation and, thus [Rule 19(a)(1)(B)] is inapplicable."); *Tross v. Ritz Carlton Hotel Co., LLC*, 928 F. Supp. 2d 498, 508 (D. Conn. 2013) (holding that a defendant failed to show that a party was necessary under Rule 19(a)(1)(B) because there was "no indication that [the party] ha[d] sought to intervene

7

to protect its rights."). As Defendant has not established that the thirteen Nursing Homes are necessary parties under Rule 19(a)(1)(A) or 19(a)(1)(B), the Court need not address whether the parties are indispensable under Rule 19(b), and Defendant's motion to dismiss for failure to join an indispensable party is denied.

## II.    Dismissal Under Rule 12(b)(2)

Defendant next moves to dismiss pursuant to Rule 12(b)(2), which allows a party to move to dismiss an action for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Defendant argues that the Court lacks both general and specific jurisdiction over Defendant under New York Law. ECF No. 9-1 at 19–20. Because the Court concludes that it has specific jurisdiction over Defendant, it does not discuss the applicability of general jurisdiction.

### a.    Legal Standard

A plaintiff "bears the burden of demonstrating [that the court has] personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Ent., Inc. v. Centennial Pictures Inc.,* 729 F.3d 215, 217 (2d Cir. 2013) (internal quotations and citation omitted). Consequently, to prove personal jurisdiction exists, a Plaintiff must include an averment of facts that, "if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation omitted). The Court must construe the pleadings in the light most favorable to plaintiff, and doubts generally must be resolved in the plaintiff's favor. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). Although the Court "will not draw 'argumentative inferences' in the plaintiff's favor," the court must "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

"A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over the defendants." *Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996). If personal jurisdiction is established pursuant to the state's long-arm statute, the Court must then assess whether assertion of jurisdiction comports with constitutional due process. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).

### b.  N.Y. C.P.L.R. § 302(a)(1)

As relevant here, New York's long-arm statute provides for specific personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). To determine if specific jurisdiction exists, there is a two-prong analysis. First, the defendant must have transacted business or contracted to supply goods or services in New York. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 788–89 (2d Cir. 1999). Second, the claim asserted "must arise from the transaction of business or the contract to supply goods or services in New York such that there is a sufficient nexus between the activity and the cause of action." *Copterline Oy v. Sikorsky Aircraft Corp.*, 649 F. Supp. 2d 5, 12 (E.D.N.Y. 2007) (citing *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983)).

Defendant does not contest the first prong. ECF No. 9-1 at 21. Instead, Defendant argues that the cause of action in this case does not arise from its activity in the state. *See id.* First, Defendant argues that the specific harm alleged by Plaintiff stems not from the laboratory services faithfully rendered from Washington; but rather, from erroneous billing codes, which allegedly caused Plaintiff to mistakenly pay Defendant. *Id.* at 22. Defendant maintains that as such, this is a garden variety billing dispute involving equitable claims, where Defendant has no contractual or

9

customer relationship with Plaintiff. *Id.* Therefore, as there was no contract to breach or commercial tort to commit, N.Y. C.P.L.R. § 302(a)(1) should not be invoked. *Id.*

 Second, Defendant argues that the Court does not have personal jurisdiction because Defendant had no direct contact with Plaintiff. *Id.* Defendant maintains that its reimbursement claims were submitted to an independent healthcare clearinghouse system located in California, which then submitted the claims to Plaintiff. *Id.* Once the claims were approved by Plaintiff, Defendant passively received the payments, which were deposited into a Washington bank account. *Id.* at 22–23.

Finally, Defendant argues that the legal elements of all four equitable causes of action each arise out of the passive receipt of money and are "completely unmoored" from the services rendered to the Nursing Homes. *Id.* at 23. Consequently, Defendant concludes that such passive receipt of money is not "any business within the state," so there can be no specific jurisdiction over Defendant. *Id.* 23–24.

The Court finds Defendant's first and second arguments unpersuasive. "A defendant may be subject to personal jurisdiction even if it never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023) (internal quotation omitted). Further, a plaintiff need not be a party to a contract take advantage of N.Y. C.P.L.R. § 302(a)'s grant of specific jurisdiction. *See Great N. Ins. Co. ex rel. Felix Schoeller Technical Papers, Inc. v. Constab Polymer-Chemie GMBH & Co.*, 75 F. App'x 824, 826 n.3 (2d Cir. 2003) (summary order). Therefore, Defendant's arguments about its relationship with Plaintiff are irrelevant, as they do not address whether Defendant's activities were purposeful and whether

there is a substantial relationship between the contracts with the Nursing Homes and the claims asserted here. *See Spetner*, 70 F.4th at 639.

Thus, the crux of the issue is Defendant's final argument—whether there is a sufficient nexus between Defendant's business activities within the state and the cause of action in this suit to establish specific jurisdiction. The New York Court of Appeals has held that the "arising from" prong of § 302(a)(1) does not require a causal link between a defendant's New York business activity and a plaintiff's injury. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). Instead, it requires "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Id.* at 168–69 (citing *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012)). Whether a plaintiff's claim arises from a defendant's New York contacts depends upon "the nature and elements of the particular causes of action pleaded." *Id.* at 169 (quotation omitted). However, § 302(a)(1) "does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." *Id.* (quotation omitted).

Here, the legal claims are not completely unmoored from Defendant's business activities in the state, as Plaintiff's claims explicitly emanate from Defendant's contracts with the Nursing Homes, all of which are located in New York. First, Plaintiff has alleged that Defendant performed the COVID-19 tests in question pursuant to its contracts with the New York Nursing Homes. ECF No. 1 ¶ 20. Second, Plaintiff has alleged that as part of its contracts with the Nursing Homes, Defendant sought reimbursement from Plaintiff for the testing. *Id.* ¶ 22–23. As at least one element of Plaintiff's claim—that Plaintiff mistakenly reimbursed Defendant for COVID-19 tests

performed pursuant to Defendant's contracts with the New York Nursing Homes—arises from Defendant's New York contacts, the Court concludes that there is a sufficient nexus between the business activity—that is, the contracts with the Nursing Homes in New York—and the causes of action in this case. As such, the Court concludes that Plaintiff has alleged facts that, if credited by the trier of fact, would suffice to establish specific jurisdiction over Defendant under N.Y. C.P.L.R. § 302(a)(1). *See Chloe*, 616 F.3d at 163.

### c. Constitutional Due Process

Next, Defendant argues that this Court's exercise of personal jurisdiction in this action would not comport with constitutional due process. ECF No. 9-1 at 24. Due process considerations require that the defendant "have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Licci ex rel. Licci*, 732 F.3d at 169 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). This jurisdictional inquiry focuses on the "affiliation between the forum and the underlying controversy." *Id.* at 170.

The analysis typically proceeds in two steps. First, the court "evaluate[s] the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." *Id.* (quotation omitted). "Where the claim arises out of, or relates to, the defendant's contacts with the forum—*i.e.,* specific jurisdiction [is asserted]—minimum contacts [necessary to support such jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Id.* (quoting *Bank Brussels Lambert*, 305 F.3d at 127).

Defendant argues that it did not set foot New York, it performed all of its services in the Washington State, and it had no contracts or contact with Plaintiff. ECF No. 9-1 at 24. Defendant

maintains that the extent of its relationship with Plaintiff was passive receipt of payments. *Id.* Defendant further maintains that all of its agreements select Washington State as the forum for disputes. *Id.* Defendant argues that this, taken together, demonstrates that it is unfair to expect Defendant to appear in a New York federal court, as Defendant has not purposely availed itself of the forum and could not have reasonably foreseen being haled into this Court. *Id.* at 24–25.

The Court disagrees. Plaintiff entered into contracts with at least thirteen Nursing Homes in New York, and the claims in this case arise out of those contracts. This is sufficient to demonstrate that Defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel. Licci*, 732 F.3d at 170 ("It would be unusual . . . if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have [the requisite minimum contacts to satisfy due process]); *see also Sirius America Ins. Co. v. SCPIE Indem. Co.*, 461 F. Supp. 2d 155, 164 (S.D.N.Y. 2006) (holding that a defendant had sufficient minimum contacts to satisfy due process, where the defendant deliberately contracted to provide services to a New York entity).

The second step of the due process analysis consists of a "reasonableness" inquiry. *Sirius America Ins. Co.*, 461 F. Supp. 2d at 164. Once the plaintiff has made a threshold showing that the defendant has sufficient minimum contacts with the state, the defendant may still defeat jurisdiction by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert*, 305 F.3d at 129 (quotation omitted). Relevant considerations include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest

in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* As Defendant has not addressed these considerations in its motion, the Court concludes that it has failed to demonstrate that "this case is the exceptional situation where exercise of jurisdiction is unreasonable even though minimum contacts are present." *Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 94 (S.D.N.Y. 2020) (quoting *Bank Brussels Lambert*, 305 F.3d at 129).

In sum, the Court concludes that it has specific personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 302(a)(1) and that its exercise of personal jurisdiction comports with constitutional due process. Therefore, Defendant's motion under Rule 12(b)(2) is denied.

### III.    Dismissal or Transfer Under Rule 12(b)(3)

Defendant also argues that this action should be dismissed or transferred pursuant to Rule 12(b)(3) because the Western District of New York is an improper venue. ECF No. 9-1 at 25.

#### a.    Legal Standard

Absent an evidentiary hearing, a plaintiff need only make a *prima facie* showing that venue is proper to survive a motion to dismiss under Rule 12(b)(3). *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). The Court is permitted to consider facts outside of the pleadings, but all facts must be viewed in the light most favorable to the plaintiff. *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 287–88 (E.D.N.Y. 2013).

#### b.    Proper Venue Under 28 U.S.C. § 1391(b)(2)

Plaintiff asserts that venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." ECF No. 13

14

at 25. The Second Circuit has explained that the word "substantial" in § 1391(b)(2) means that "significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins.*, 417 F.3d at 357. Thus, a two-part inquiry is appropriate: courts first identify the nature of the claims involved and the alleged acts or omissions that gave rise to those claims, and then determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).

Here, the nature of the claims is that Defendant contracted with the Nursing Homes to provide COVID-19 testing to their employees. ECF No. 1 ¶ 20. As part of Defendant's contracts with these Nursing Homes, Defendant sought reimbursement from New York health insurance companies, such as Plaintiff, which included filing the necessary claims on the Nursing Home employees' behalf with Plaintiff. *See id.* ¶¶ 22–23. Specifically, Plaintiff alleges that when seeking reimbursement, Defendant improperly categorized the testing. *Id.* ¶¶ 44–47. As a result of the improper characterization, Plaintiff reimbursed Defendant when it should not have. *Id.* ¶ 49. All the claims in this action seek equitable relief related to the mistaken payment. *Id.* ¶¶ 53–76.

With respect to the second part of the inquiry, it is clear that a substantial part of the events giving rise to Plaintiff's claims occurred in the Western District of New York and that Plaintiff properly alleged this in its complaint. First, Plaintiff alleges that Defendant contracted with Nursing Homes located in the Western District of New York to provide COVID-19 testing services. *Id.* ¶ 20. Second, Plaintiff alleges that the testing related to the contracts occurred in the Western District of New York. *Id.* Third, Plaintiff alleges that as part of the contracts between Defendant and the Nursing Homes, Defendant submitted reimbursement requests to Plaintiff, which is located in the Western District of New York. *See id.* ¶¶ 22–23, 44–47. Finally, Plaintiff, from the Western

15

District of New York, reimbursed Defendant based on the submissions from Defendant. *Id.* ¶ 48. Based on these allegations, the Court concludes that a substantial part of the events giving rise to Plaintiff's claims occurred in the Western District of New York and venue is proper in this District. Consequently, Defendant's motion to dismiss pursuant to Rule 12(b)(3) is denied.

### c. Transfer

Defendant also moves to transfer this action to the Western District of Washington pursuant to Rule 12(b)(3). Rule 12(b)(3) is only relevant when venue is improper. As the Court has concluded that this venue is proper, it need not address Defendant's arguments related to transfer or its arguments related to inconvenience. Accordingly, Defendant's motion to transfer pursuant to 12(b)(3) is denied.

## IV.  Dismissal Under 12(b)(6)

Finally, Defendant moves to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 9-1 at 27. Defendant alleges that Plaintiff has failed to state a claim because there is an adequate remedy at law available, and it is not against equity and good conscience to permit Defendant to retain the monies at issue. *Id.* at 27–28.

### a. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court deciding a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### b. Remedy at Law

Defendant argues that in order to plead cognizable claims for the equitable relief requested in this case, Plaintiff must plausibly allege that there is no adequate remedy at law for its claims. ECF No. 9-1 at 27. Defendant argues that Plaintiff has failed to do so in this case because there are two adequate remedies at law available. *Id.* at 28. First, Defendant asserts that Plaintiff could sue the Nursing Homes for breach of contract. *Id.* Second, Defendant asserts that the declaratory judgment currently being litigated in State Court is an adequate remedy. *Id.* As these remedies exist, Defendant maintains that this action must be dismissed because Plaintiff has failed to state a claim upon which relief can be granted. *See id.* at 27.

The Court disagrees. Plaintiff's claims are that it erroneously paid Defendant, and that Defendant will not return the money. It is unclear to the Court how a breach of contract action against the Nursing Homes would be an adequate remedy, as the Nursing Homes cannot compel Defendant to return the money. As for Defendant's argument related to the State Court action, by Defendant's own admission, it is not a party to that action. *Id.* at 6. Therefore, it is again unclear to the Court how as a result of that action, Defendant could be compelled to return the money at issue. Thus, the Court concludes that Defendant has not identified an adequate remedy at law that would require this action to be dismissed.

### c. Equity and Good Conscience

Defendant's last argument is that Plaintiff has failed to state a claim because each claim asserted by Plaintiff requires that it be against equity and good conscience to permit Defendant to retain the money at issue. *Id.* at 28. Defendant maintains that it is not against equity and good

conscience to permit Defendant to retain the monies in this case because they were earned for faithfully rendered services. *Id.* Therefore, Defendant argues that this action must be dismissed. *Id.*

However, the Court rejects this argument because it believes it is premature at this point in the litigation. "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Here, Defendant's argument related to the faithfully rendered services goes to the merits of Plaintiff's claim, but at this point, the only relevant inquiry is whether, accepting Plaintiff's allegations as true, the complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Thus, in this case, the only issue is whether Plaintiff has "allege[d] factors weighing in favor of repayment sufficient to create a plausible inference" that equity and good conscience demand such repayment. *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10–CV–2843, 2010 WL 4038826, at *6 (E.D.N.Y. Oct. 14, 2010).

Plaintiff has alleged that when Defendant submitted testing claims for reimbursement, it improperly categorized the claims as diagnostic testing, which Plaintiff was obligated to reimburse. ECF No. 1 ¶¶ 45–47. However, Plaintiff alleges that the claims were actually for surveillance testing, which Plaintiff was not obligated to reimburse. *Id.* Plaintiff claims that based on the improper categorization and confusion surrounding the Pandemic, it reimbursed Defendant for the claims. *Id.* ¶ 48. Nevertheless, Plaintiff ultimately discovered that it had paid Defendant in error and asked Defendant to return the money, which Defendant refused to do. *Id.* ¶ 49–52. The Court concludes that these allegations are sufficient to create the plausible inference that equity and good

conscience demand that Defendant return the money. As such, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion, ECF No. 9, is DENIED. Defendant shall answer Plaintiff's complaint by April 28, 2025.

IT IS SO ORDERED.

Dated: March 26, 2025

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

19