UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EXCELLUS HEALTH PLAN, INC. d/b/a
EXCELLUS BLUECROSS BLUESHIELD,

Plaintiff,

Civil Action No.: 6:24-cv-06263-FPG

-vs-

**ANSWER WITH COUNTERCLAIMS**

BLACKFLY INVESTMENTS, LLC d/b/a
MOLECULAR TESTING LABS,

Defendant.

---

Defendant, CareNexa, LLC f/k/a Blackfly Investments, LLC d/b/a Molecular Testing Labs ("Defendant" or "Molecular"), by and through their attorneys, Hashmi Law Firm, submits its Answer with Counterclaims to the Complaint filed by Plaintiff Excellus Health Plan, Inc. d/b/a Excellus Bluecross Blueshield ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's Complaint creates a deceptively incomplete picture of the regulatory environment, rules and regulations in place and in effect during the applicable time period when Defendant's services were duly rendered and Plaintiff's payment obligations were unambiguous. Not only is Plaintiff improperly demanding repayment of funds paid by Plaintiff to Defendant for legally performed and legally reimbursed COVID-19 laboratory testing of long-term care facility patients and employees, but Plaintiff has already wrongfully deprived Defendant of $167,987.06 of such payments, which are the subject of Plaintiff's counterclaims.

## RESPONSES TO ALLEGATIONS

Defendant responds to the allegations of the Complaint as follows:

1. With respect to the allegations in paragraph 1, admits that Plaintiff purports to state

the nature of this lawsuit but denies Plaintiff's mischaracterizations and denies any wrongdoing.

2. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.

3. With respect to the allegations in paragraph 3, admits that, at all relevant times, Defendant is a foreign limited liability company with its principal place of business in Vancouver, Washington but denies the remaining allegations, in that Defendant's principal place of business is actually located at 14401 SE 1st Street, Vancouver, Washington, 98684.

4. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 4 and 5.

5. Admits the allegations in paragraph 6.

6. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 7, 8, 9, and 10.

7. With respect to the allegations in paragraph 11, admits only that the COVID-19 Pandemic occurred in or around 2020 and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

8. Admits the allegations in paragraph 12.

9. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

10. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 14, 15, 16, 17, 18, and 19, and Defendant further states that they selectively omit necessary context.

11. With respect to the allegations in paragraph 20, admits only that Defendant contracted with nursing homes in New York State to perform COVID testing of nursing home

employees, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

12. With respect to the allegations in paragraph 21, refers to the referenced document for its contents and meaning. To the extent a response is required, Defendant admits only that its contracts with New York State nursing homes provided that the nursing homes would pay Defendant a flat "service fee" for testing services in the event they were not covered by a third-party payer, but denies the characterization that these contracts made any reference to the "Nursing Home Testing Mandate".

13. With respect to the allegations in paragraph 22, refers to the referenced document for its contents and meaning. To the extent a response is required, Defendant admits only that it facilitated payment from Plaintiff and third-party payers through a clearinghouse but denies acting on the employees' behalf to seek coverage or reimbursement.

14. Admits the allegations in paragraph 23.

15. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24, 25, 26, 27, 28, 29, 30, 31, 32, and 33.

16. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 34, 35, 36, 37, 38, 39, 40, 41, 42, and 43, and refers to the documents referenced therein for their content and meaning.

17. With respect to the allegations in paragraphs 44 and 45, admits only that Defendant submitted nursing home testing claims to a clearinghouse at various times during the Pandemic, which were ultimately forwarded to Plaintiff, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

18. Lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraphs 46, 47, 48, and 49.

19. With respect to the allegations in paragraph 50, admits only that Defendant received a demand for reimbursement from Plaintiff but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

20. Admits the allegations in paragraph 51.

21. With respect to the allegations in paragraph 52, Defendant admits that it has retained duly earned payments for faithfully rendered services, but denies the characterization that Plaintiff has any right to their return.

22. Denies the allegations contained in paragraphs 54, 55, 56, 57, 58, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 72, 73, 74, 75, 76, and the WHEREFORE clause.

23. Repeats and realleges the above responses with respect to paragraphs 53, 59, 64, and 71.

24. To the extent any allegation in the Complaint has not been specifically admitted, denied, or otherwise responded to herein, Defendant denies each and every such allegation.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

25. Defendant refutes Plaintiff's selective and incomplete discussion of the applicable rules, regulations, orders and guidance regarding COVID-19 testing and insurance payment obligations and asserts that Plaintiff was and is obligated under such applicable rules, regulations, orders and guidance to pay Defendant for all such tests submitted by Defendant to Plaintiff during the applicable period and that Plaintiff owes Defendant an additional nearly $167,987.06 for payments wrongfully denied, along with applicable interest for the entire period of non-payment.

**Second Affirmative Defense**

26. Defendant preserves and reasserts its objection to Plaintiff's failure to join indispensable parties, which was previously raised in its motion and denied by the Court.

**Third Affirmative Defense**

27. Defendant preserves and reasserts its objection to subject matter jurisdiction, which was previously raised in its motion and denied by the Court.

**Fourth Affirmative Defense**

28. Defendant preserves and reasserts its objection to personal jurisdiction, which was previously raised in its motion and denied by the Court.

**Fifth Affirmative Defense**

29. Defendant preserves and reasserts its objection to venue, which was previously raised in its motion and denied by the Court.

**Sixth Affirmative Defense**

30. Defendant preserves and reasserts its objection to Plaintiff's failure to state a claim, which was previously raised in its motion and denied by the Court.

**Seventh Affirmative Defense**

31. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

**Eighth Affirmative Defense**

32. Plaintiff's claims are barred, in whole or in part, because Plaintiff has an adequate remedy at law.

**Ninth Affirmative Defense**

33. Plaintiff's claims are barred, in whole or in part, because it voluntarily paid

Defendant with full knowledge of the facts.

**Tenth Affirmative Defense**

34. Plaintiff's claims are barred, in whole or in part, because Defendant faithfully and accurately performed services for which monies were due and paid.

**Eleventh Affirmative Defense**

35. Plaintiff's claims are barred, in whole or in part, because there are valid, enforceable contracts governing the subject matter, which precludes equitable recovery against Defendant.

**Twelfth Affirmative Defense**

36. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, waiver, release, estoppel, and unclean hands.

**Thirteenth Affirmative Defense**

37. Plaintiff's claims are barred, in whole or in part, because Plaintiff accepted the outcome after the fact, with full knowledge of the circumstances.

**Fourteenth Affirmative Defense**

38. Plaintiff's claims are barred, in whole or in part, by the doctrine of good faith reliance and overriding public policy considerations, in that:

a. Defendant provided essential COVID-19 testing services pursuant to New York State mandates and in good faith reliance on applicable laws and regulations that expressly or implicitly required such services to be covered. Defendant reasonably relied on the regulatory framework and the urgent public health needs presented at the time.

b. Plaintiff, a multi-billion dollar health insurance provider with superior knowledge and resources, having accepted and benefited from Defendant's

services during a declared public health emergency, cannot now disavow its reimbursement obligations and seek repayment based on allegedly changed regulatory interpretations—interpretations that both the New York-based Plaintiff and its New York-based insured "Nursing Homes" were better equipped to understand and apply.

c. Plaintiff's recovery would unjustly penalize compliance with critical public health directives and violate principles of equity and good conscience.

**Fifteenth Affirmative Defense**

39. Plaintiff's claims are barred, in whole or in part, by the negligence and/or gross negligence, or other culpable conduct of Plaintiff and/or third parties over which Defendant had no control or right to exercise such control.

**Sixteenth Affirmative Defense**

40. Plaintiff's claims are barred, in whole or in part, because Plaintiff approved of and ratified Defendant's past conduct.

**Seventeenth Affirmative Defense**

41. Plaintiff's claims are barred, in whole or in part, because it failed to mitigate damages.

**Eighteenth Affirmative Defense**

42. Plaintiff's claims are barred, in whole or in part, by the Discharge for Value rule.

**Nineteenth Affirmative Defense**

43. If any monies were or are due and owing to Plaintiff: (a) the amount is less than pleaded in the Complaint; (b) the amount is overstated and/or improperly calculated; and/or (c) monies are due and owing to Defendant from Plaintiff. Thus, Defendant is not liable to Plaintiff,

or in the alternative, Plaintiff's claims should be reduced and Defendant is entitled to a set off and recoupment.

**Twentieth Affirmative Defense**

44. Plaintiff breached the covenant of good faith and fair dealing in its implied contract with Defendant.

**COUNTERCLAIMS**

Defendant ("Molecular") states the following for its counterclaims against Plaintiff ("Excellus"):

**Factual and Regulatory Background**

45. Molecular entered into contractual agreements with several New York nursing homes to provide COVID-19 testing services to their employees (the "Nursing Home Contracts"), pursuant to applicable state mandates and public health directives, including under Circular 11, issued on May 20, 2020 by the New York Department of Financial Services, the regulator for all insurance companies operating in the state of New York ("DFS Circular 11").

46. At all relevant times, DFS Circular 11 required Excellus to pay for the exact types of COVID-19 testing that Excellus denies being obligated to pay.

47. DFS Circular 11 states the following, in relevant part:

> "TO: All Insurers Authorized to Write Accident and Health Insurance in New York State, […] Prepaid Health Services Plans, and Licensed Independent Adjusters [….]
>
> RE: COVID-19 Testing of Nursing Home and Adult Care Facility Personnel [….]
>
> II. Testing Nursing Home and Adult Care Facility Personnel for COVID-19
>
> Section 3202 of the CARES Act requires an issuer providing coverage of items and services described in § 6001(a) of division F of the FFCRA, codified as Public Law 116–127, to reimburse a health service provider who

> or that renders diagnostic testing for COVID-19. […]
>
> DOH guidance provides that testing for COVID-19 shall be authorized by a healthcare provider for individuals who meet one or more of the following criteria: […]
>
> - An individual has had close (i.e., within six feet) or proximate contact with a person known to be positive with COVID-19; […]
>
> - An individual is employed as a health care worker, first responder, or other essential worker who directly interacts with the public while working; […]
>
> Due to the elevated risk for personnel and patients at nursing homes and adult care facilities, including adult homes, enriched housing programs, and assisted living residences in New York, and in consideration of EO 202.30 and DOH guidance, personnel at these nursing homes or facilities meet the criteria for COVID-19 testing."

48. Although DFS Circular 11 was subsequently amended and repealed on February 25, 2022 by Circular 3 issued by the New York Department of Financial Institutions ("DFS Circular 3"), contrary to the false implication in the Complaint, DFS Circular 3 contains no language that it applies retroactively to withhold payments for services already rendered during the period when DFS Circular 11 was in effect.

49. Against this backdrop and well prior to February 25, 2022, Molecular fulfilled its obligations under the Nursing Home Contracts by providing testing services to the nursing home employees in good faith, relying on the belief that these services would be covered by the insurance policies held by the nursing homes.

50. Excellus, as the insurer for the nursing homes, established a course of conduct by consistently paying for these services and had a contractual *and legal* obligation to do so.

51. From around May 2020 to June 2021, Molecular administered nearly 1,700 COVID-19 tests for the public good in a time of dire need, and submitted claims totaling $167,987.06 to Excellus, some of which were paid and then unilaterally recouped by Plaintiff, or

simply never paid by Plaintiff.

52. Prior to changing its COVID-19 testing reimbursement policies, Excellus had already accepted and paid over $300,000 for the exact same critically important and legally mandated services.

53. Despite due demand, Excellus now refuses to pay Molecular under the guise of "regulatory changes" and continues to wrongfully retain these duly earned funds.

**COUNTERCLAIM I**
**(Breach of Implied Contract)**

54. Molecular repeats and realleges paragraphs 44-53 as if fully stated herein.

55. An implied contract arose from Excellus's course of conduct, including its repeated acceptance and payment of claims for COVID-19 testing services provided by Molecular totaling over $300,000, which were submitted in accordance with applicable New York regulations mandating payment.

56. Molecular faithfully rendered its services pursuant to the implied contract.

57. Excellus has breached the implied contract by refusing to compensate Molecular for services rendered.

58. As a result, Molecular suffered damages in an amount to be determined at trial but believed to be no less than $167,987.06.

**COUNTERCLAIM II**
**(Promissory Estoppel – Pled in Alternative to Implied Breach of Contract)**

59. Molecular repeats and realleges paragraphs 44-58 as if fully stated herein.

60. By its words and course of conduct, Excellus unambiguously promised to pay for the COVID-19 testing services provided by Excellus, as required under the applicable New York regulations established during a public health emergency.

61. Excellus did, in fact, pay over $300,000 to Molecular for the COVID-19 testing services.

62. Molecular reasonably relied upon Excellus's promise by continuing to provide COVID-19 testing services, incurring costs, and submitting claims for reimbursement.

63. Molecular's ongoing reliance was foreseeable, particularly because New York law mandated payment for the services rendered against the backdrop of a massive public health emergency.

64. To Molecular's substantial detriment, Excellus did not honor its promise by refusing to compensate Molecular for services rendered.

65. It would be unjust and inequitable to permit Excellus to avoid its obligations after inducing Molecular's reliance.

66. As a result, Molecular suffered damages in an amount to be determined at trial but believed to be no less than $167,987.06.

**COUNTERCLAIM III**
**(Unjust Enrichment – Pled in Alternative to Implied Breach of Contract))**

67. Molecular repeats and realleges paragraphs 44-66 as if fully stated herein.

68. Excellus now withholds payment on claims for services already performed by Molecular, thereby unjustly retaining the benefits conferred by Molecular's efforts without providing full compensation.

69. Excellus has been enriched at Molecular's expense in that, *inter alia*, Molecular's services enabled Excellus to: (1) fulfill its coverage obligations to its insured nursing homes; and (b) reduce its exposure to regulatory liability and penalties for refusing coverage during a public health crisis.

70. Under principles of equity and good conscience, Excellus should not be permitted

to retain the benefits of Molecular's services without providing fair and complete compensation in an amount to be determined at trial but believed to be no less than $167,987.06.

**COUNTERCLAIM V**
**(GBL § 349 – Deceptive Acts and Practices)**

71. Molecular repeats and realleges paragraphs 44-70 as if fully stated herein.

72. Excellus, as a large, sophisticated insurance provider, engaged in consumer-oriented conduct by processing, reimbursing, and administering claims for COVID-19 surveillance testing of nursing home employees, services mandated under New York public health regulations during the COVID-19 pandemic.

73. Excellus represented, through its established course of conduct and repeated reimbursement of claims over an extended period, that it would honor and pay claims for such services as submitted by Molecular in compliance with applicable regulations.

74. Excellus's subsequent conduct, namely, its unilateral withholding of payments for services already rendered amid a public health crisis, under the guise of "regulatory changes" long after the fact, constitutes a deceptive and materially misleading business practice.

75. Excellus's conduct is consumer-oriented because it, *inter alia*, affects not only Molecular but the broader nursing home community, healthcare service providers, and their employees and patients across New York, particularly those who relied on Excellus's consistent practice of reimbursing mandated COVID-19 surveillance testing.

76. Excellus's actions have caused actual injury to Molecular, including but not limited to the wrongful withholding of substantial amounts of money, disruption of business operations, and other consequential damages.

77. As a direct and proximate result of Excellus's deceptive and unfair practices, Molecular has suffered injury and is entitled to recover actual damages, treble damages, attorneys'

fees, and other relief pursuant to General Business Law § 349.

**JURY TRIAL DEMAND**

Defendant demands a trial by jury for all issues so triable.

WHEREFORE, Defendant demands judgment against Excellus as follows:

a) Dismissal of the Complaint, with prejudice;

b) On the First, Second, Third, and Fourth Counterclaims, monetary damages in an amount to be determined at trial but believed to be no less than $167,987.06 plus interest as allowed by law;

c) On the Fifth Counterclaim, actual damages, treble damages, attorneys' fees, and other relief pursuant to General Business Law § 349;

d) Costs and disbursements incurred in connection with this action, including, but not limited to, reasonable attorneys' fees; and

e) For such other relief as this Court deems just and proper.

DATED: April 28, 2025

**HASHMI LAW FIRM**

/s/ Kamran F. Hashmi
Kamran F. Hashmi
2280 East Avenue
Second Floor
Rochester, New York 14610
Tel: (585) 802-1253
kamran@rocattorney.com
*Attorneys for Defendant*